**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CODY D. BOND,** | * | |
| *Plaintiff,* | * | |
| | * | **Case No. 8:22-cv-01509-JRR** |
| **v.** | * | |
| **FRANK KENDALL**, *et al.*, | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

I.   **<u>INTRODUCTION</u>**

Plaintiff Cody Bond, a former Airman of the United States Air Force, brings this action against Defendants Frank Kendall, III, in his official capacity as Secretary of the United States Air Force, Lloyd J. Austin, III, in his official capacity as Secretary of the United States Department of Defense, and the United States of America (collectively, the "Defendants").  (ECF No. 1 ¶¶ 4-7.) He requests that the court vacate his convictions in the underlying court-martial based on alleged errors that occurred throughout the proceedings, order that he be removed from the sex registry, order that Defendant Kendall change the characterization of Plaintiff's service to "general" and his reason for separation as "misconduct."  *See generally* ECF No. 1.

Pending before the court is Defendants' Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Failure to State a Claim.  (ECF No. 17; "the Motion.")  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023). For the reasons set forth herein, the Motion will be granted.

II.   **BACKGROUND**

A.   **Statutory and Legal Framework**

"In the exercise of its authority over the armed forces, Congress has long provided for specialized military courts to adjudicate charges against service members." *Ortiz v. U.S.*, 138 S. Ct. 2165, 2170 (2018).  "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Burns v. Wilson*, 346 U.S. 137, 140 (1953).  In doing so, "Congress established a Uniform Code of Military Justice applicable to all members of the military establishment." *Id.*  The Uniform Code of Military Justice ("UCMJ") established "a hierarchy within the military establishment to review the convictions of courts-martial, to ferret out irregularities in the trial, and to enforce the procedural safeguards which Congress determined to guarantee to those in the Nation's armed services." *Id.* at 141.

Within the military justice system, there are three types of courts-martial at the trial court level: summary, special, and general.  *Willenbring v. U.S.*, 559 F.3d 225, 227 n.4 (4th Cir. 2009). "A summary court-martial adjudicates minor offenses only, while a special court-martial has jurisdiction over more serious offenses but cannot impose punishment of more than six months' confinement." *Id.*  "In contrast, a general court-martial [] is entitled to adjudicate all offenses identified under the UCMJ, and may impose any lawful sentence." *Id.*  The military justice system also includes four appellate courts: "The Court of Criminal Appeals (CCA) for the Army, Navy-Marine Corps, Air Force, or Coast Guard." *Ortiz*, 138 S. Ct. at 2171.  Each appellate court uses "three-judge panels of either officers or civilians [to] review all decisions in which the sentence imposed involves a punitive discharge, incarceration for more than one year, or death." *Id.*  Above the four appellate courts is the United States Court of Appeals for the Armed Forces ("CAAF"),

where an individual may appeal a decision of the CCA.  10 U.S.C. § 941; *see* 10 U.S.C. § 867(a)(3) ("The [CAAF] shall review the record in . . . all cases reviewed by a [CCA] in which, upon petition of the accused and on good cause shown, the [CAAF] has granted a review.").

After the CAAF review, the Supreme Court has jurisdiction under 28 U.S.C. § 1259 "to review the CAAF's decisions by writ of certiorari." *Ortiz*, 138 S. Ct. at 2171.  "Finally, a service member may collaterally attack his or her court-martial conviction in a federal district court, regardless of whether the service member is in custody." *Bergdahl v. United States*, No. 21-418 (RBW), 2023 WL 4743707, at *2 (D.D.C. July 25, 2023); *see Burns*, 346 U.S. at 141 (explaining that "Congress has provided a special post-conviction remedy within the military establishment, apart from ordinary appellate review, whereby one convicted by a court-martial, may attack collaterally the judgment under which he stands convicted").

### B.   Factual and Procedural Background[1]

#### i.   *Underlying Events*

Plaintiff was an Airman in the United States Air Force.  (ECF No. 1 ¶ 4.)  In May 2013, he married a woman by the name of "KB."  *Id.* ¶ 15.  In June 2014, Plaintiff engaged in nonconsensual sexual intercourse with KB.  *Id.* ¶¶ 27-30.  After the incident, in July 2014, Plaintiff and KB got into an argument due to financial concerns.  *Id.* ¶¶ 32-33.  Plaintiff alleges that, during the argument, he asked KB for his firearm,[2] and when he did not receive the firearm, he left the home, and KB followed him.  *Id.* ¶ 34-35.  KB's parents convinced the two to return to the home, and the argument escalated.  *Id.* ¶ 36.  Plaintiff alleges that at one point, he stated "you're lucky I don't have my gun right now."  *Id.* ¶ 37.  The argument ended, and KB's parents took Plaintiff and his

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.  (ECF No. 1.)

[2] The firearm had been "hidden by a doctor's request due to [Plaintiff's] suicidal ideations."  (ECF No. 1 ¶ 34.)

firearm to the San Antonio Military Medical Center ("SAMMC"). *Id.* ¶¶ 38-39.  While at SAMMC, Plaintiff "made several statements expressing both suicidal ideation and a desire to hurt KB and her family during his initial treatment that night." *Id.* ¶ 46.

### ii.   General Court-Martial Proceedings

On June 25, 2015, at a general court-martial, Plaintiff was charged with two specifications[3] of sexual assault in violation of Article 120 of the UCMJ, codified at 10 U.S.C. § 920 ("sexual assault charge");[4] one specification of making a worthless check by "dishonorably failing to maintain sufficient funds for the payment of a check" in violation of Article 134 of the UCMJ, codified at 10 U.S.C. § 934 ("worthless check charge");[5] and three specifications of communicating threats in violation of Article 134 of the UCMJ, codified at 10 U.S.C. § 934 ("communicating threat charge").[6]  (ECF No. 1 ¶ 57.)  Plaintiff pled guilty to the worthless check charge and was tried by a general court-martial with regard to the other charges. *Id.* ¶ 59.  Plaintiff was convicted by court-martial of one violation by sexual assault and two violations by communication of a threat.  *Id.* ¶ 59.  Plaintiff was sentenced to reduction to pay grade E-I,[7] confinement for 10 years, and dishonorable discharge from the service. *Id.* ¶ 63.

---

[3] "A specification is, under military law, similar to an indictment, and is a 'plain, concise, and definite statement of the essential facts constituting the offense charged.'"  *Willenbring*, 559 F.3d at 227 n.5 (quoting *United States v. Thompson*, 59 M.J. 432, 441 (C.A.A.F. 2004)).
[4] The alleged sexual assault occurred sometime in February 2014; the other alleged sexual assault occurred in June 2014.  (ECF No. 1 ¶ 57.)
[5] The check charge related to events in October 2014, where "Plaintiff attempted to purchase a 2014 Hyundai Elantra, while knowingly having insufficient funds in his account for the check to clear."  (ECF No. 1 ¶ 54.)
[6] The communicating threat charge involved an alleged threat to KB in June 2014 and "allegedly communicating in December to another service member a threat to harm KB."  (ECF No. 1 ¶ 58.)  The Complaint does not contain details involving the third communicating threat charge.
[7] 10 U.S.C. § 934 provides that:

> A court-martial sentence of an enlisted member in a pay grade above E-1, as set forth in the judgment of the court-martial entered into the record under section 860c of this title (article 60c), that includes--
> > (1) a dishonorable or bad-conduct discharge;
> > (2) confinement; or
> > (3) hard labor without confinement;

### iii.     CCA Proceeding

Plaintiff appealed his convictions to the CCA for the Air Force, *United States v. Bond*, No. ACM 38934, 2017 WL 2895905 (A. F. Ct. Crim. App. June 7, 2017).  (ECF No. 1 ¶ 60.)  In his appeal, Plaintiff raised six counts of error:

> (1) The [Military Judge's ("MJ")] release of Plaintiff's medical records into evidence [was] in violation of MRE 513;
>
> (2) [T]he second charge of communicating a threat under Article 134 was conditional bravado;
>
> (3) [T]he MJ's reasonable doubt instruction was in error through the language of "must convict" (argument rendered moot by the United States Court of Appeals for the Armed Forces' ruling in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017) a few months prior to the decision);
>
> (4) Whether KB's victim impact statement's reference to "multiple" sexual assaults during sentencing, when Plaintiff was only convicted of one, was an error;
>
> (5) Whether there was an unreasonable delay between sentencing and post-trial processing; and
>
> (6) Whether Plaintiff's conviction for sexual assault was legally and factually sufficient.

(ECF No. 1 ¶ 60.)  The CCA set aside Plaintiff's conviction for one of the communicating threat charges and upheld the balance of Plaintiff's convictions.  *Id.* ¶ 61.

### iv.     CAAF Proceeding

After the CCA proceeding, Plaintiff then appealed to the CAAF.  *United States v. Bond*, 77 M.J. 196 (C.A.A.F. 2018).[8]

---

reduces that member to pay grade E-1, if such a reduction is authorized by regulation prescribed by the President. The reduction in pay grade shall take effect on the date on which the judgment is so entered.

10 U.S.C. § 934(a).  Because Plaintiff's sentence involved a "dishonorable discharge," (ECF No. 1 ¶ 144), his pay grade was reduced to E-1.

[8] While Plaintiff does not allege that he subsequently appealed to the CAAF, "a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Megaro v.*

On January 21, 2018, the CAAF denied review without an opinion. *Id.* Subsequently, Plaintiff petitioned the CAAF again; on July 28, 2020, the CAAF dismissed the petition ruling: "[o]n consideration of the petition for extraordinary relief in the nature of writ of habeas corpus, it is ordered that the petition is dismissed." *Bond v. United States*, 80 M.J. 292 (C.A.A.F. 2020).

### v.      Habeas Petition

On September 14, 2020, Plaintiff filed a habeas petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of California, *Bond v. Kirk*, No. 20-cv-1816 DMS (JLB), 2021 WL 2038315 (S.D. Cal. May 21, 2021).[9] In that case, Plaintiff raised four claims:

> First, he claims the finding of sexual assault is not supported by sufficient evidence based on newly discovered evidence. Second, Plaintiff contends there was insufficient evidence to support the finding of communicating a threat. Third, he argues the judge committed error in allowing KB to testify about multiple "assaults" rather than the one assault for which he was convicted. Fourth, Plaintiff asserts the judge committed error in his instructions to the members of the court-martial.

2021 WL 2038315, at *2. The court denied Plaintiff's request for habeas relief, explaining that:

> Plaintiff's second and third claims were presented to the [United States Air Force Court of Criminal Appeals ("AFCCA")],[10] which rejected the claims on the merits after full and fair consideration. The AFCCA also rejected Plaintiff's fourth claim alleging instructional error on the ground Plaintiff's trial counsel did not object to the instruction. Although that was not a ruling on the merits of the claim, this Court cannot say the military courts did not give the claim full and fair consideration.

---

*McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Matters of public record include administrative filings. *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016).

[9] As stated above, while Plaintiff does not allege in his Complaint that he filed a previous habeas petition, at this stage, the court may take judicial notice of matters of public record, including court and administrative filings. *See Dyer*, *supra*.

[10] The AFCCA is an abbreviation for the Air Force CCA. *See* Section II.B.iii, *supra*.

> This leaves only Plaintiff's first claim, which the [Office of the Judge Advocate ("OJAG")][11] denied because it was untimely. That ruling created a procedural bar against further review of the claim in this Court. To overcome that procedural bar, Plaintiff had to show cause and prejudice, or demonstrate that the failure to consider the claim[] will result in a fundamental miscarriage of justice. Plaintiff has not made either of those showings here. Thus, this Court will not review Plaintiff's first claim here.

2021 WL 2038315, at *3 (internal citations and quotation marks omitted).

### C.      Instant Case

On April 7, 2022, Plaintiff filed the instant Complaint for Declaratory Judgment.  (ECF No. 1; "the Complaint").  Plaintiff requests that the court vacate his underlying convictions in the court-martial for sexual assault and wrongfully communicating a threat for four reasons:

> Claim 1: The AFCCA erred in not finding that the trial court's admission of Plaintiff's statement to Emergency Department Staff into evidence was an error.
>
> . . .
>
> Claim 2: The AFCCA failed to give full and fair consideration to Plaintiff's claim that the evidence for the Article 134 wrongfully communicating a threat charge was legally and factually sufficient because it based its holding in part upon evidence which had been ruled to be hearsay at trial.
>
> . . .
>
> Claim 3: Plaintiff's conviction under Article 120(b)(1)(B) must be set aside as legally and factually insufficient because there was zero evidence on the record, even when all inferences are drawn in favor of the prosecution, to suggest that there was a second offensive touching causing KB to engage in a sexual act, as is required under

---

[11] 10 U.S.C. § 873 provides:

> At any time within three years after the date of the entry of judgment under section 860c of this title (article 60c), the accused may petition the Judge Advocate General for a new trial on the grounds of newly discovered evidence or fraud on the court. If the accused's case is pending before a Court of Criminal Appeals or before the Court of Appeals for the Armed Forces, the Judge Advocate General shall refer the petition to the appropriate court for action. Otherwise the Judge Advocate General shall act upon the petition.

> the canons of statutory interpretation of surplusage and in pari materia.
>
> . . .
>
> Claim 4: If this Court vacates the Article 120 Sexual Assault conviction, and the Article 134 Wrongfully Communicating a Threat conviction, it should order that Plaintiff's characterization of service be upgraded to "general."

(ECF No. 1 at 8, 11-12, 16.)  The prayer for relief seeks: (i) an order "[v]acating his conviction under UCMJ Article 134, for allegedly wrongfully communicating a threat in June of 2014;" (ii) an order "[v]acating his conviction under UCMJ Article 120 for allegedly sexually assaulting KB in June of 2014; (iii) an order removing him from the sex offender registry; (iv) an order "[c]ompelling the Secretary of the Air Force to change Plaintiff's characterization of service to 'General' and his reason for separation to 'misconduct'"; (v) attorney's fees and costs; (vi) any other relief this court deems necessary and proper.  (ECF No. 1 at 16-17.)

## III.  **LEGAL STANDARDS**

### A.  **Federal Rule of Civil Procedure 12(b)(1)**

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject

matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

### B.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist.

LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F.

Supp. 3d 521, 526 (D. Md. 2015)).

## IV.   **ANALYSIS**

Defendants argue that this court lacks subject matter jurisdiction because Plaintiff failed to

identify an express waiver of sovereign immunity.  (ECF No. 17-1 at 13.)[12]  Plaintiff counters that

the court has subject matter jurisdiction to hear Plaintiff's "non-habeas collateral challenge to a

court martial conviction under [28 U.S.C.] § 1331 despite the statute's lack of an explicit waiver

of immunity."[13]  (ECF No. 19 at 6-7; citing *Yongo v. U.S.*, No. 5:10-CV-220-F, 2013 WL 2285341,

at *5 (E.D.N.C. May 23, 2013), and *Chincilla v. Whitley*, No. 3:20CV871-HEH, 2021 WL

1792075, at *3 (E.D. Va. May 5, 2021)).

Generally, "[t]he United States and its officers may not be sued unless federal legislation

specifically authorizes the suit.  Absent a waiver, sovereign immunity shields the Federal

Government and its agencies from suit."  *Curtis v. Pracht*, 202 F. Supp. 2d 406, 418-19 (D. Md.

2022).  Further, "[s]uits against government agents acting in their official capacities are also barred

by sovereign immunity because they are considered suits against the United States itself."  *Id.* at

418 n.7.  Because "[s]overeign immunity is jurisdictional in nature . . . . if a plaintiff has not

alleged or demonstrated that the government has waived sovereign immunity with regard to a

---

[12] For consistency, the court cites to the page numbers as they appear at the top of documents filed through ECF.
[13] To the extent Plaintiff relies on 28 U.S.C. § 2201 and 28 U.S.C. § 1361, neither the Declaratory Judgment Act nor the Mandamus Act operates as an express waiver of sovereign immunity.  *See Worsham v. U.S. Dept. of the Treasury*, No. ELH-12-2635, 2013 WL 5274358, at *7 (D. Md. Sept. 17, 2013) (explaining that "[t]he Declaratory Judgment Act 'plainly does not operate as an express waiver of sovereign immunity . . . because it neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief'") (quoting *Muirhead v. Mecham*, 427 F.3d 14, 17 n.1 (1st Cir. 2005) (internal quotation marks omitted)); *Washington Legal Found. v. U.S. Sentencing Com'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (explaining that "[i]t is well settled that [28 U.S.C. § 1361] does not by itself waive sovereign immunity"); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (concluding that "[t]he provisions of 28 U.S.C. § 1361 creating the federal mandamus action do not constitute a waiver of sovereign immunity by the United States"); *see also E.V. v. Robinson*, No. 2:16-cv-01973-JAM-CKD, 2016 WL 5847046, at *2 (E.D. Cal. Oct. 5, 2016) (dismissing case on sovereign immunity grounds when the plaintiff requested the court issue a mandamus writ involving a court-martial proceeding because the defendant had not waived sovereign immunity, and 28 U.S.C. § 1331 and § 1361 do not waive sovereign immunity).

claim asserted against it, that claim must be dismissed for lack of jurisdiction." *Yongo v. U.S.*, No. 5:10-CV-220-F, 2013 WL 2285341, at *5 (E.D.N.C. May 23, 2013) (internal citations and quotation marks omitted).

"Although 28 U.S.C. § 1331 creates jurisdiction for federal questions, it does not operate as a blanket waiver of sovereign immunity." *Yongo*, 2013 WL 2285341, at *5 (citing *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996); *see Penland*, 78 F. Supp. 3d at 491-92 (noting that "[i]t is clear that the grant of '[f]ederal question jurisdiction [in 28 U.S.C. § 1331] does not by itself waive sovereign immunity'") (quoting *Stone v. Castro*, Civ. No. 14–656(CRC), 72 F. Supp. 2d 186, 190, 2014 WL 5514139, at *3 (D.D.C. Nov. 3, 2014)). However, in considering non-habeas collateral challenges to a court-martial conviction under 28 U.S.C. § 1331, courts have held that subject matter jurisdiction exists "despite the statute's lack of an explicit waiver of immunity." *See Yongo v. U.S.*, No. 5:10-CV-220-F, 2013 WL 2285341, at *6 (E.D.N.C. May 23, 2013) (explaining that "[a]lthough it appears that the Fourth Circuit has not determined the issue, the court finds persuasive the at least two other circuit courts that have found that a plaintiff may bring a non-habeas collateral challenge to a court martial conviction under § 1331, despite the statute's lack of an explicit waiver of immunity"); *Allen v. U.S. Air Force*, 603 F.3d 423, 430 (8th Cir. 2010) (reviewing the plaintiff's collateral challenge under 28 U.S.C. § 1331 because the plaintiff was not in custody at the time he filed the case and therefore, habeas review did not apply); *U.S. ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.D.C. 2006) (concluding that "the district court had subject-matter jurisdiction to hear [the plaintiff's] collateral attack under § 1331 . . . .").

Defendants argue that Plaintiff's "avenue of collateral attack [28 U.S.C. § 1331] is a quite narrow exception to the well-established rule that a cause of action against the federal government

11

requires more than merely relying on 28 U.S.C. § 1331." (ECF No. 22 at 5.)  The court agrees and finds *Schlesinger v. Councilman*, 420 U.S. 738 (1975), instructive.

In *Councilman*, the plaintiff had filed an action in district court "moving for a temporary restraining order and a preliminary injunction to prevent his impending court-martial."  420 U.S. at 741.  The district court concluded that it had jurisdiction under 28 U.S.C. § 1331 and enjoined the defendants from continuing the court martial proceeding.  *Id.* at 742, 744.  The United States Court of Appeals for the Tenth Circuit affirmed.  *Id.* at 742; *Councilman v. Laird*, 481 F.2d 613 (10th Cir. 1973), *rev'd sub nom. Schlesinger v. Councilman*, 420 U.S. 738 (1975).  The Supreme Court granted the Solicitor General's petition for a *writ of certiorari* and considered, *sua sponte*, "the jurisdictional and equity issues necessarily implicit in [the] case."  *Councilman*, 420 U.S. at 743.  The Court requested supplemental briefs on certain issues, including the subject matter jurisdiction of the district court.  *Id.*

The *Councilman* petitioners argued that "even if the [d]istrict [c]ourt might otherwise have had jurisdiction under [§] 1331, this was removed by enactment of Art. 76 of the Uniform Code of Military Justice, 10 U.S.C. [§] 876."[14]  *Councilman*, 420 U.S. at 743.  The petitioners further maintained that Article 76 demonstrated "that Congress intended to limit collateral attack in civilian courts on court-martial convictions to proceedings for writs of habeas corpus under 28 U.S.C. [§] 2241."  *Id.* at 745.

In considering the jurisdictional issue, the *Councilman* Court began by noting that "[h]abeas corpus proceedings have been and remain by far the most common form of collateral attack on court-martial judgments; but historically they have not been the exclusive means of

---

[14] Article 76 "provides in pertinent part that 'the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter . . . are final and conclusive' and 'all action taken pursuant to those proceedings (is) binding upon all . . . courts . . . of the United States . . . .'"  *Schlesinger v. Councilman*, 420 U.S. 738, 745 (1975).

collateral attack." 420 U.S. 738, 747 (1975).  The *Councilman* Court held that Article 76 of the

UMJC does not "confine collateral attack in Art. III courts exclusively to habeas corpus." *Id.* at

751.  In so holding, the Court explained:

> Plaintiffs' interpretation of Art. 76, if its full reach were accepted, not only would prevent servicemen from obtaining injunctions under any circumstances against pending court-martial proceedings. It also would preclude any collateral relief in Art. III courts, even if the court-martial lacked jurisdiction in the most traditional sense, unless the serviceman could satisfy the requirements of habeas corpus jurisdiction. As pointed out above, certain remedies alternative to habeas, particularly suits for backpay, historically have been available. Indeed, this availability was reiterated shortly before enactment of the Code. Yet nothing in Art. 76 distinguishes between habeas corpus and other remedies also consistent with well-established rules governing collateral attack. If Congress intended such a distinction, it selected singularly inapt language to express it.
>
> Nor does the legislative history justify an interpretation of the language so at odds with its clear purport. As we have had occasion recently to repeat, 'repeals by implication are disfavored,' and this canon of construction applies with particular force when the asserted repealer would remove a remedy otherwise available. It is true, as Plaintiffs urge, that the writ of habeas corpus occupies a position unique in our jurisprudence, the consequence of its historical importance as the ultimate safeguard against unjustifiable deprivations of liberty. We read the statements attending congressional consideration as addressing the particular concern that Art. 76 not be taken as affecting the availability of habeas corpus, a concern of special significance because of the vital interests the writ protects and because it is the most common mode of collateral relief from court-martial convictions. But an affirmative intent to preclude all other forms of collateral relief, on whatever ground, cannot be inferred from these scattered statements in the legislative history. Restraint on liberty, although perhaps the most immediately onerous, is not the only serious consequence of a court-martial conviction. Such convictions may result, for example, in deprivation of pay and earned promotion, and even in discharge or dismissal from the service under conditions that can cause lasting, serious harm in civilian life.

420 U.S. 738, 751-53 (1975) (internal citations omitted).

The *Councilman* Court further explained:

13

This is not to say, of course, that for every such consequence there is a remedy in Art. III courts. That depends on whether the relief is sought in an action otherwise within the court's subject-matter jurisdiction, on a ground that recognizes the distinction between direct and collateral attack, and in a form that the court is able with propriety to grant. We also emphasize that the grounds upon which military judgments may be impeached collaterally are not necessarily invariable. For example, grounds of impeachment cognizable in habeas proceedings may not be sufficient to warrant other forms of collateral relief. Lacking a clear statement of congressional intent one way or the other, the question whether a court-martial judgment properly may be deemed void—*i.e.*, without res judicata effect for purposes of the matter at hand—may turn on the nature of the alleged defect, and the gravity of the harm from which relief is sought. Moreover, both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress.

*Id.* at 753. Accordingly, the Court concluded that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 and Article 76 did not bar such jurisdiction. *Id.*

Relying on *Councilman*, Defendants argue that subject matter jurisdiction under 28 U.S.C. § 1331 is unavailable to Plaintiff because (1) Plaintiff previously filed a habeas petition (and did not prevail); and (2) Plaintiff is on supervised release and "cannot be considered a non-custodial individual for purposes of a collateral challenge." (ECF No. 22 at 6-8.)

Courts have noted that the proper vehicle for an individual in custody to collaterally attack court-martial proceedings is a habeas petition. *See Luke v. U.S.*, 942 F. Supp. 2d 154, 162 (D.D.C. Cir. 2013) (explaining that "habeas review is appropriate for convicted military personnel who are still in custody"); *Green v. Skulute*, 839 F. Supp. 797, 801 (D. Wyo. 1993) (noting that "[f]or those in custody, a collateral attack on a court-martial judgment must be by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241"). In contrast, other courts have held, guided by *Councilman*, non-custodial plaintiffs can seek relief under 28 U.S.C. § 1331. *See Penland v. Mabus*, 78 F. Supp. 3d 484, 492 (D.D.C. 2015) (noting that "district courts have subject matter

jurisdiction under 28 U.S.C. § 1331 to hear a non-custodial plaintiff's collateral attack on a court martial when she alleges that the court martial had no jurisdiction or there was some other equally fundamental defect in the proceedings"); *Scott v. United States*, 351 F. Supp. 3d 1, 7 (D.D.C. 2018) (explaining that "a district court has federal question jurisdiction 'to review the validity of court-martial proceedings brought by non-custodial plaintiffs who cannot bring habeas suits'") (quoting *Sanford v. United States*, 586 F.3d 28, 31 (2009)); *Luke*, 942 F. Supp. 2d at 162 (holding that "[a] district court has subject matter jurisdiction to hear a non-custodial plaintiff's collateral attack based on federal question jurisdiction"); *U.S. ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006) (explaining that, in *Councilman*, the Supreme Court confirmed, among other things, that federal courts had § 1331 jurisdiction "in the absence of custody").  Ultimately, 28 U.S.C. § 1331 is the proper vehicle to collaterally attack a court martial proceeding for an individual who is not in custody and therefore, cannot seek habeas relief.  *See Scott*, *supra*; *cf. United States v. Hassebrock*, 21 F.4th 494, 498 (4th Cir. 2021) (concluding that "coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek collateral relief under 28 U.S.C. § 2255").

    In the instant case, Plaintiff falls within the meaning of "in custody" for purposes of habeas review under 28 U.S.C. § 2241 because at the time he filed this action he was on supervised release.[15]  *See Lopez v. Terrell*, 654 F.3d 176, 180 (2d Cir. 2011) (explaining although the

---

[15] Plaintiff filed this action on April 7, 2022.  At that time, Plaintiff was on supervised release. (ECF No. 1 ¶ 64.)  His supervised release documents (ECF No. 1-3) indicate that his supervised release began on January 27, 2021, and was set to expire on July 11, 2023.  *Id.* at 2.  For purposes of habeas petitions, courts consider whether a petitioner is in custody at the time the petition is filed.  *See Maleng v. Cook*, 490 U.S. 488, 491 (1989) (explaining that the Supreme Court has interpreted the federal habeas statute "as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed"); *In re McNeill*, 68 F.4th 195, 200 n.3 (4th Cir. 2023) (noting that the "custody requirement is assessed at the time of filing"); *United States v. Burford*, No. DKC-20-1396, 2022 WL 971009, at *1 (D. Md. Mar. 31, 2022) (noting that "[w]e have interpreted the statutory language as requiring that the habeas petitioner be "in custody" under a conviction or sentence under attack at the time his petition is filed" and dismissing pending motion because the plaintiff was not in custody when he filed the motion to vacate under 28 U.S.C. § 2255).

"[plaintiff] has been released from prison does not divest us of jurisdiction; he is still 'in custody' for purposes of 28 U.S.C. § 2241 because he remains subject to the conditions of his supervised release") (citing *Dixon v. Miller*, 293 F.3d 74, 78 (2d Cir. 2002)); *Tisdale v. Menifee*, 166 F. Supp. 2d 789, 791 (S.D. N.Y. 2001) (recognizing that "for purposes of habeas review, 'a Plaintiff under supervised release may be considered in custody' because supervised release constitutes a constraint that is not imposed on society at large") (quoting *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)); *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005) (noting that "a habeas Plaintiff remains in custody of the United States while on supervised release").  Thus, a habeas petition is the proper way for Plaintiff to collaterally attack the underlying court-martial proceedings.[16]  *See Green v. Skulute*, 839 F. Supp. 797, 801 (D. Wyo. 1993) (explaining that "[f]or those in custody, a collateral attack on a court-martial judgment must be by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241"); *Luke v. U.S.*, 942 F. Supp. 2d 154, 162 (D.D.C. Cir. 2013) (noting that "habeas review is appropriate for convicted military personnel who are still in custody").  The law is clear that a custodial plaintiff may attack a court-martial judgment by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See* Section IV.B., *supra.*  In contrast, a non-custodial plaintiff may attack a court-martial judgment under 28 U.S.C. § 2241. *Id.*

   Plaintiff does not cite, and the court is not aware of, any authority that the limited waiver of sovereign immunity in 28 U.S.C. § 1331 applies to circumstances where a plaintiff is in custody and is free to file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Importantly, Plaintiff fails to adequately address his previous habeas petition in which he did not prevail.  He does not cite, and the court is not aware of, any authority providing that district courts have subject

---

[16] As discussed, Plaintiff previously filed a habeas petition, which was denied.  *Bond v. Kirk*, No. 20-cv-1816 DMS (JLB), 2021 WL 2038315 (S.D. Cal. May 21, 2021).

matter jurisdiction under 28 U.S.C. § 1331 to hear a collateral attack of a court-martial proceeding brought by a custodial Plaintiff who was also previously denied habeas relief.  Indeed, it is illogical to conclude that against the backdrop of the Supreme Court's holding in *Councilman*, and subsequent federal cases, that a custodial plaintiff who was previously denied habeas relief may then file a second habeas petition to collaterally attack the same court-martial proceedings by invoking the federal court's subject matter jurisdiction under 28 U.S.C. § 1331.  *See Councilman*, 420 U.S. at 749 (cautioning that while Article 76 could not be read as to bar an action challenging court-martial convictions where a district court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, such an expansion does not mean "for every such consequence there is a remedy in Art. III courts"); *see Baker v. Schlesinger*, 523 F.2d 1031, 1034 (6th Cir. 1975) (noting that "*Councilman* does not, of course, open the door to collateral attacks on court-martial convictions indiscriminately").  In light of *Councilman*, numerous courts have exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1331 despite the statute's lack of an explicit waiver of immunity for plaintiffs who are not in custody.  *See* Section II, *supra.*  Critically, *Councilman* has not been read, and cannot be read, to stand for the proposition that an individual who has previously availed himself of a non-meritorious habeas petition to attack court-martial proceedings may later seek a second bite at the review apple pursuant to 28 U.S.C. § 1331 to attack the same court-martial.  Such a result is countenanced by neither law nor logic.

Plaintiff fails to allege an express waiver of sovereign immunity and the limited waiver in 28 U.S.C. § 1331 does not apply in the instant circumstance.  Accordingly, the court lacks subject matter jurisdiction over Plaintiff's claims.

## CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss (ECF No. 17), is **GRANTED**.

/S/
_____
Julie R. Rubin
United States District Judge

August 22, 2023

18